IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHERYN WARD, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06 C 1360 |
| ) | |
| BOARD OF TRUSTEES OF CHICAGO ) | Judge George W. Lindberg |
| STATE UNIVERSITY, ELNORA DANIELS, ) | |
| BEVERLY ANDERSON AND FARHAD ) | |
| SIMYAR. ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Katheryn Ward ("plaintiff" or "Ward") filed a two-count Second Amended Complaint ("complaint"). Count I of the complaint is directed toward individual defendants Elnora Daniel[1] ("Daniel"), Beverly Anderson ("Anderson") and Farhad Simyar ("Simyar") (collectively "individual defendants") and alleges retaliation in violation 42 U.S.C. § 1983 ("§ 1983"). Count II of the complaint is directed toward the Board of Trustees of Chicago State University ("Board") and alleges age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621 *et seq*. Defendants now jointly move for summary judgment in their favor as to both counts in the complaint. For the reasons set forth more fully below, defendants' motion is granted and summary judgment is entered in their favor and against plaintiff as to Counts I and II of the complaint.

*I. Factual Background*

The facts in this case are undisputed unless specifically noted below. Ward was born on January 6, 1941. In 1983, she received a masters degree in international business from

---

[1] Ms. Daniel was incorrectly sued as Elnora Daniels in the complaint.

Roosevelt University in Chicago, Illinois. That same year, Ward began working at Chicago State University ("CSU") as an instructor of marketing. Two years later, CSU promoted Ward to the position of associate professor of marketing and management. In 1990, Ward became an assistant professor of marketing. She remained in that position until 1993, when she left CSU because she was not tenured as a professor.

Between 1993 and 2001, Ward worked for a private marketing research company, a Chicago Alderman and Kennedy-King College. Then, in August or September 2001, Ward returned to CSU as the assistant to the dean in the College of Business. Ward remained in that position until her termination in September 2005. As assistant to the dean, among other things, Ward assisted in the day-to-day operations of the College of Business and served as the first point of contact to resolve student issues. At the time of her termination, Ward was 62-years-old and held a single masters degree in international business. Ward did not have a doctorate degree.

At all times relevant to this case, Daniel was the president of CSU. The president is the only employee of CSU with the authority to terminate other employees. In July 2004, CSU hired Anderson to serve as the provost and vice president of academic affairs. As provost, Anderson assumed Daniel's duties when she was absent from CSU and made recommendations to Daniel regarding tenure and employee discipline. Anderson also focused her attention on improving the College of Business and scheduled a faculty and staff retreat in September 2004 to identify problems within the college and to aid the staff in brainstorming for solutions. One recommendation that emerged from the retreat was to eliminate the assistant to the dean position and revert back to a traditional college structure with an assistant dean who had a doctorate degree.

Prior to hiring Ward in 2001, the College of Business' administrative hierarchy included a dean and assistant dean. When CSU hired Ward in 2001, she received the title of assistant to the dean because she did not have a doctorate degree. From 2001 until Ward's termination in 2005, the College of Business did not have an assistant dean and utilized an administrative hierarchy of dean and assistant to the dean.

In July 2005, CSU hired Simyar as the dean of the College of Business. Simyar was over the age of sixty when he joined CSU. A couple of months after Simyar joined CSU, during the first week of September 2005, Ward and a limited number of her co-workers in the College of Business received an e-mail entitled "Sexual Molests Chinese Students" [sic]. The e-mail (hereinafter "disputed e-mail") appeared to contain sexually explicit pictures of Simyar and a female and stated "Dr. Simyar used his position to sexually molest Chinese students every chance he got while he was in tenure in China. Please forward the attached pictures to the Board of Trustees for the appropriate disciplinary action."

Ward did not know the disputed e-mail's sender and received the disputed e-mail at her CSU e-mail address, not into a personal e-mail account. Ward's e-mail address and contact information at the university were available to the sender via CSU's website and other CSU publications. A few days after Ward received the disputed e-mail, she forwarded it to other CSU employees, including Simyar's secretary. Shortly thereafter, CSU terminated Ward's employment effective September 15, 2005. CSU asserts that it terminated Ward as part of a restructuring within the College of Business and in an attempt to return to the dean and assistant dean administrative hierarchy within that college. Ward claims that she was fired because of her age and in retaliation for forwarding the disputed e-mail to other CSU employees. On June 7,

2006, almost nine months after her termination from CSU and after she initiated the instant lawsuit, Ward filed a charge of age discrimination with the EEOC. Ward received a right to sue letter from the EEOC on July 26, 2006.

## II. Analysis

To prevail on their motion for summary judgment, defendants must show that the pleadings, depositions, answers to interrogatories, and admissions on file, together with any admissible affidavits do not create a genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering this motion, the court must construe all facts in the light most favorable to Ward and must review all reasonable inferences in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. Ward's Age Discrimination Claim

To establish her age discrimination case under the ADEA, Ward must show that the Board discriminated against her because of her age. *See* 29 U.S.C. § 623(a)(1). Ward does not present any direct proof to support her discrimination claim. Therefore, the court will analyze her claim under the indirect method recognized in *McDonnell Douglas Corp. V. Green*, 411 U.S. 792 (1973). Under the indirect method, Ward "must establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class, (2) she was performing her job satisfactorily, (3) she suffered a materially adverse employment action, and (4) her job duties were absorbed by employees who are not members of her protected class." *Johan v. Little Lady Foods, Inc.*, 434 F.3d 943, 946 (7th Cir. 2006). If Ward can establish a *prima facie* case, then the burden of production shifts to CSU "to show legitimate, nondiscriminatory reasons for

4

its actions." *Id*. Then, Ward has the burden of showing that CSU's stated reasons for her termination are pretextual. *Id*.

The Board concedes that Ward has established the first three elements of a *prima facie* case of discrimination. There is no dispute that the Board terminated Ward's employment and that at the time of her termination, she was over forty years of age and was performing her job satisfactorily. However, the Board and Ward disagree about whether Ward's job duties were absorbed by employees who are not members of her protected class. According to the Board, Simyar, Dean of the College of Business, absorbed Ward's duties upon her termination.[2] Dr. Simyar was born on September 2, 1943 and is less than three years younger than Ward. He is clearly within Ward's protected class, namely individuals over forty years of age.

Ward claims that Dr. Tolia, the former acting Dean of the College of Business, and not Simyar, actually absorbed her duties upon her termination. Dr. Tolia was born on May 12, 1967 and is approximately twenty-six years Ward's junior. In support of these statements, Ward cites to paragraph 24 of her Local Rule 56.1(b)(3) statement of additional facts, which states "Ward was reassigned to Dr. Tolia. Dr. Simyar instructed her to assist Dr. Tolia. Dr. Tolia was born on May 12, 1967." Paragraph 24 does not address who absorbed Ms. Ward's duties upon her termination and certainly does not support Ward's assertion that Dr. Tolia absorbed her duties.

Therefore, the Board's assertion that Simyar absorbed plaintiff's duties upon her

---

[2] The Board cites paragraphs 1, 7 and 40 of its Local Rule 56.1(a)(3) statement of facts ("statement of facts") in support of this statement. Paragraphs 1, 7 and 40 do not specifically state that Simyar absorbed all of Ward's duties upon her termination. However, in support of paragraph 7 of its statement of facts, the Board cites to paragraph 22 of its answer to plaintiff's first set of interrogatories. That answer states that Simyar assumed plaintiff's duties upon her termination.

5

termination is undisputed for purposes of this motion. *See Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir.1994) (stating that "district courts are not obliged in our adversary system to scour the record looking for factual disputes."). Accordingly, Ward cannot establish a *prima facie* case of age discrimination because she has not presented any evidence that her job duties were absorbed by a CSU employee who was not a member of her protected class.

Furthermore, even if the court found that Ward had established a *prima facie* case of age discrimination, the Board provided a legitimate, non-discriminatory reason for her termination, namely departmental restructuring, and Ward failed to show that the Board's reason was pretextual. In fact, plaintiff's response brief in opposition to the Board's motion for summary judgment does not even address the Board's proffered reason for her termination. Therefore, the Board's motion for summary judgment as to Ward's age discrimination claim, Count II, is granted. *See Sembos v. Philips Components*, 376 F.3d 696, 701 (7th Cir. 2004) (holding that plaintiff's failure to present evidence of pretext is grounds for granting defendant's motion for summary judgment.).

### B. Ward's Retaliation Claim

Next, the court turns to Ward's claim of retaliation. Ward claims that the individual defendants, Daniel, Anderson and Simyar, violated §1983 by terminating Ward's employment at CSU in retaliation for her decision to forward the disputed e-mail to other CSU employees. Liability under § 1983 must be "predicated upon personal responsibility." *Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996)(quoting *Schultz v. Baumgart,* 738 F.2d 231, 238 (7th Cir.1984)). "An *individual* cannot be held liable in a § 1983 action unless he caused or participated in [the] alleged constitutional deprivation." *Starzenski,* 87 F.3d at 879 (quoting

*Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983)).

It is undisputed that Daniel, as the president of CSU, was the only person at CSU with the authority to terminate other CSU employees. Therefore, Simyar did not have the authority to terminate and could not have terminated Ward for any reason, retaliatory or otherwise. Further, Ward failed to present any facts indicating that Simyar participated in, or in any way caused her termination. Accordingly, there are no facts to support a finding that Simyar was personally responsible for Ward's termination and the motion for summary judgment as to Ward's retaliation claim, Count I, is granted as to defendant Simyar.

Finally, the court addresses Ward's retaliation claim as it relates to defendants Daniel and Anderson. Similar to Ward's discrimination claim discussed above, Ward does not have any direct evidence of retaliation to support her §1983 claim against Daniel and Anderson. Therefore, in analyzing the retaliation claim, the court again undertakes an indirect-evidence burden shifting analysis. To establish a *prima facie* case of retaliation in violation of the First Amendment, a public employee must present evidence that: 1) she engaged in constitutionally protected speech; 2) she suffered a deprivation likely to deter the exercise of her First Amendment rights; and 3) her speech was a motivating factor in her employer's action. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendants to demonstrate that they would have taken the same action in the absence of the protected speech. In other words, the defendants must articulate a legitimate, non-retaliatory basis for Ward's termination. If defendants meet this threshold, then plaintiff has the burden of presenting evidence that defendants' proffered reason for her termination is pretextual. *Id*. at 717.

7

Under *Garcetti*, a recent Supreme Court decision, the court must make a new threshold finding before it undertakes a burden shifting analysis on a retaliation claim. *Garcetti v. Ceballos*, 126 S. Ct. 1951, 1960 (2006). Now, before analyzing whether plaintiff can establish a *prima facie* case for retaliation, the court must first decide whether Ward was speaking as a citizen, or as part of her public job when she forwarded the disputed e-mail to her co-workers. *Garcetti,* 126 S. Ct. at 1960. In *Garcetti*, the Supreme Court found that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. Therefore, if this court finds that Ward forwarded the disputed e-mail as part of her public job and not as a citizen, Ward is not entitled to constitutional protection from any discipline stemming from the dissemination of the disputed e-mail. Under that scenario, the court will not even reach the burden shifting analysis because, as a matter of law, Ward cannot prevail on her retaliation claim.

It is undisputed that Ward received the disputed e-mail from an unknown sender at her CSU e-mail address in her official capacity as the assistant to the dean of the College of Business. Ward did not receive the disputed e-mail in a personal e-mail account. The unknown sender was likely able to obtain Ward's professional contact information because it was posted on the CSU website and in other CSU publications. The sender apparently targeted Ward and other CSU employees as recipients because of their positions within the College of Business.

Further, within the text of the disputed e-mail, the sender requested that the recipients, including Ward, "forward the attached pictures [of Simyar] to the Board of Trustees for appropriate disciplinary action." One of Ward's job responsibilities as the assistant to the dean

8

of the College of Business was to serve as the first point of contact to resolve student issues within the college. The sender of the disputed e-mail did not identify himself/herself as a student, however, an allegation that the Dean of the School of Business molested students while teaching at another institution could be construed as a "student issue" and thus was within Ward's purview to handle as the assistant to the dean. Under these facts, the court finds that Ward forwarded the disputed e-mail as part of her public job and not as a mere citizen. *See Mills v. City of Evansville, Ind.*, 452 F.3d 646, 648 (7th Cir. 2006) (finding that when an employee made a controversial statement to co-workers while at work, the statement was made as part of the employee's public job and not as a citizen). Therefore, Ward's communication is not insulated from employer discipline by the Constitution and she cannot state a § 1983 retaliation claim against Daniel and Anderson. *Id.*

Furthermore, even if the court found the Ward could state a *prima facie* case of retaliation under § 1983, she has not provided admissible evidence to contradict defendants' proffered non-retaliatory basis for her termination, namely that she was terminated because of departmental restructuring within the College of Business. Although the moving party bears the burden of establishing the lack of any genuine issue of material fact, Ward must present definite, competent evidence to rebut the summary judgment motion. *See Celotex Corp.*, 477 U.S. at 323; Fed.R.Civ.P. 56(c). In the briefing on the instant summary judgment motion, Ward did not address the issue of pretext as it related to her retaliation claim, and she did not make any attempt to present facts to support a finding that defendants' proffered basis for terminating her was a pretext for retaliation. Therefore, the motion for summary judgment as to Ward's retaliation claim, Count I, is granted as to defendants Daniel and Anderson. *See Sembos,* 376

F.3d at 701.

### III. *Conclusion*

In summary, the court finds that plaintiff has failed to establish a claim for age discrimination against the Board under the ADEA and has failed to establish a § 1983 retaliation claim against defendants Daniel, Anderson and Simyar. Accordingly, the motion for summary judgment is granted in its entirety.

**ORDERED:** Defendants' motion for summary judgment is granted. The court finds in favor of defendants Board of Trustees of Chicago State University, Elnora Daniel, Beverly Anderson and Farhad Simyar and against plaintiff Katheryn Ward as to Counts I and II of the Second Amended Complaint. Plaintiff's counsel shall submit a draft judgment consistent with this Memorandum and Order.

E N T E R:

George W. Lindberg
SENIOR U.S. DISTRICT JUDGE

DATED: May 22, 2007